**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BUC-EE'S, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3-26-CV-00414-JRK |
| | ) | |
| v. | ) | Honorable James R. Knepp III |
| | ) | |
| COLES IP HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COLES IP HOLDINGS, LLC'S**
**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

This case asks a simple question: can a large national chain that is expanding into Ohio use meritless trademark litigation as a tool to force out a local business that has operated in Ohio for decades? Coles IP Holdings, part of a family-owned Ohio business that has operated Mickey Mart convenience stores across northern Ohio communities since the 1980s, says no.

Texas-based Buc-ee's, Ltd. opened its first Ohio travel center this month. It is a massive 74,000-square-foot facility off Interstate 70 near Dayton, with 108 fuel pumps and 700+ parking spaces. At the same time, Buc-ee's filed this lawsuit claiming that consumers will be confused if Mickey Mart is allowed to continue using its beloved moose mascot at its small convenience stores because, according to Buc-ee's, consumers will mistake the moose for the Buc-ee's beaver. But Buc-ee's claims ignore reality. Ohio consumers can readily distinguish a moose from a beaver:

| Mickey the Moose | Buc-ee's Beaver |
|:---:|:---:|
| | |

20128380-1

## COLES IP'S ANSWER TO PLAINTIFF'S COMPLAINT

Coles IP answers Buc-ee's Complaint as follows:

1. Coles IP admits Plaintiff purports to bring this action for alleged trademark infringement, unfair competition and cancellation of its trademark registrations under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, but Coles IP denies Plaintiff's claims and denies Plaintiff is entitled to any relief it seeks in this action.

2. Coles IP admits the allegations in Paragraph 2.

3. Coles IP admits the allegations in Paragraph 3.

4. Coles IP admits the allegations in Paragraph 4.

5. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 and therefore they are denied.

6. Coles IP admits the allegations in Paragraph 6.

7. Coles IP admits there is a chain of travel centers under the name Buc-ee's. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7 and therefore they are denied.

8. Coles IP admits a logo including a cartoon beaver has been used at travel centers under the name Buc-ee's. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 and therefore they are denied.

9. Coles IP admits that travel centers under the name Buc-ee's are massive travel centers located along major interstates and highways and, in that way, are not like small family-owned convenience stores located in local communities. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9 and therefore they are denied.

20128380-1

10.     Coles IP denies Plaintiff and the Buc-ee's Marks have become iconic brands. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 10 and therefore they are denied.

11.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 and therefore they are denied.

12.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 and therefore they are denied.

13.     Coles IP admits that travel centers under the name Buc-ee's are located in Texas, Florida, Missouri, Alabama, Georgia, South Carolina, Tennessee, Kentucky, Mississippi, Virginia, Colorado, and, as of April 6, 2026, in Ohio. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13 and therefore they are denied.

14.     Coles IP admits a travel center under the name Buc-ee's recently opened in Ohio near Dayton. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 14 and therefore they are denied.

15.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 and therefore they are denied.

16.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 and therefore they are denied.

17.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 and therefore they are denied.

18.     Coles IP admits Plaintiff owns U.S. Reg. Nos. 4,316,461; 4,007,064; 7,419,559; 3,246,893;  4,973,185;  4,007,063;  4,973,077;  8,113,899;  8,113,900;  4,316,457;  6,421,516;

4,973,184; 4,973,076; 7,419,562; and 3,763,277. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18 and therefore they are denied.

19.     Coles IP lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 and therefore they are denied.

20.     Coles IP denies the allegations in Paragraph 20.

21.     Coles IP admits it is the owner of U.S. Reg. Nos. 6,121,916 and 7,483,033 for the marks shown in those registrations covering "Retail convenience stores; Promoting the goods of others by means of the issuance of loyalty reward points" in Class 35 and "Magnetically encoded gift cards; Downloadable computer application software for mobile phones, namely, software for use in advertising goods for sale, locating stores and getting directions, earning and tracking reward points, and displaying related store information" in Class 9. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 21 and therefore they are denied.

22.     Coles IP admits it is the owner of U.S. Ser. No. 99/262,130 for the mark shown in that application covering "Stickers" in Class 16, "Cups, namely, coffee cups, tumblers, and shot glasses; Non-electric portable coolers" in Class 21, "Clothing, namely, t-shirts, hooded sweatshirts, and socks; Headwear, namely, baseball caps, beanies, and toboggan hats" in Class 25, "Footballs; Baseballs; Baseball bats; Stuffed toy animals" in Class 28, "Chicken wings; Breaded chicken strips; Cooked chicken; Grilled chicken; fried chicken; Potato chips" in Class 29, "Candy" in Class 30, and "Retail store services featuring convenience store items and gasoline; Retail store services featuring printed comics, stickers, coffee cups, tumblers being drinking glasses, shot glasses, non-electric portable coolers, t-shirts, hooded sweatshirts, socks, baseball caps, beanies,

toboggan hats, footballs, baseballs, baseball bats, stuffed toy animals, food products and pre-packaged food products, chicken wings, breaded chicken strips, cooked chicken, grilled chicken, fried chicken, potato chips, candy; Promoting the sale of goods of others by means of the issuance of loyalty rewards points for purchase of a company's goods at a retail store; Retail fuel supply services and retail convenience store services featuring fuels, lubricants and additives; distributorship services featuring fuels, lubricants and additives" in Class 35. Coles IP denies the remaining allegations in Paragraph 22.

23. Coles IP admits that Plaintiff refers to the marks in U.S. Reg. Nos. 6,121,916 and 7,483,033 and U.S. Ser. No. 99/262,130 as "Defendant's Logos" in the complaint. Coles IP lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23 and therefore they are denied.

24. Coles IP denies the allegations in Paragraph 24.

25. Coles IP denies the allegations in Paragraph 25.

26. Coles IP denies the allegations in Paragraph 26.

27. Coles IP denies the allegations in Paragraph 27.

28. Coles IP denies the allegations in Paragraph 28.

29. Coles IP denies the allegations in Paragraph 29.

30. Coles IP denies the allegations in Paragraph 30.

31. Coles IP admits that Plaintiff has never expressly authorized Coles IP to use and/or register any trademark, but Coles IP denies that any authorization was required. Coles IP denies the remaining allegations in Paragraph 31.

32. Coles IP admits the allegations in Paragraph 32.

33. Coles IP denies the allegations in Paragraph 33.

34.     Coles IP denies the allegations in Paragraph 34.

35.     Coles IP denies the allegations in Paragraph 35.

36.     Coles IP denies the allegations in Paragraph 36.

37.     Coles IP denies the allegations in Paragraph 37.

38.     Coles IP denies the allegations in Paragraph 38.

39.     Coles IP denies the allegations in Paragraph 39.

40.     Coles IP denies the allegations in Paragraph 40.

41.     Coles IP repeats its answers to the allegations above as if fully set forth herein.

42.     Coles IP denies the allegations in Paragraph 42.

43.     Coles IP denies the allegations in Paragraph 43.

44.     Coles IP repeats its answers to the allegations above as if fully set forth herein.

45.     Coles IP denies the allegations in Paragraph 45.

46.     Coles IP denies the allegations in Paragraph 46.

47.     Coles IP repeats its answers to the allegations above as if fully set forth herein.

48.     Coles IP admits that the Court has authority under the cited statutes to determine issues of registration, but Coles IP denies that Plaintiff is entitled to any of the relief sought and Coles IP denies the remaining allegations in Paragraph 48.

49.     Coles IP denies the allegations in Paragraph 49.

50.     Coles IP admits Plaintiff petitions the Court to issue an order certified to the Director of the USPTO cancelling Defendant's Registrations and refusing registration of Defendant's Application pursuant to 15 § U.S.C. 1119 and 28 § U.S.C. 2201, but Coles IP denies Plaintiff is entitled to the order it requests in Paragraph 50.

51.     Prayer for Relief: Coles IP denies that Plaintiff is entitled to any of the relief it seeks in its prayer for relief.

### COLES IP'S AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Coles IP asserts the following affirmative defenses to Buc-ee's Complaint and reserves the right to amend as discovery proceeds:

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted because, among other things, the allegations do not plausibly establish a likelihood of confusion between the parties' marks in light of their differences in appearance, meaning, and commercial impression, as well as differences in trade channels and market positioning.

2.     Plaintiff's claims are barred, in whole or in part, because Coles IP has priority in relevant geographic markets, including Ohio.

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff unreasonably delayed in asserting its claims for many years despite knowledge, actual or constructive, of the long-standing use and registration of Coles IP's Marks, and that delay has prejudiced Coles IP, which has invested substantial time and resources in developing the Marks and brand.

4.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations and analogous limitations periods because Plaintiff's claims are based on conduct that allegedly occurred many years before the filing of the Complaint, and Plaintiff failed to timely assert those claims.

5.     Plaintiff's claims are barred, in whole or in part, by estoppel because Plaintiff's conduct, including its failure to timely challenge the use and registrations of Coles IP's marks for many years, led Coles IP to reasonably believe that Plaintiff would not assert the claims alleged here, and Coles IP relied on that conduct to its detriment.

20128380-1

6.      Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence because Plaintiff, with knowledge of use and registration of Coles IP's Marks for many years, failed to object and thereby implicitly consented to such use and registration, upon which Coles IP reasonably relied to its detriment.

7.      Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiff has engaged in inequitable conduct related to the subject matter of this action, including attempting to assert overbroad trademark rights and seeking to suppress lawful competition despite the absence of a likelihood of confusion.

COLES IP'S COUNTERCLAIMS

Coles IP for its counterclaims against Buc-ee's alleges as follows:

**Parties, Jurisdiction, and Venue**

1.      Coles IP is a limited liability corporation organized and existing under the laws of the State of Ohio with a principal place of business at 3619 East State, Route 113, Milan, Ohio 44846.

2.      On information and belief, Buc-ee's is a Texas limited partnership with a principal place of business at 327 FM 2004, Lake Jackson, Texas 77566.

3.      This Court has jurisdiction over the subject matter of this counterclaim pursuant to at least 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a); and 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over Buc-ee's, and venue is proper in this District, at least because Buc-ee's has consented to jurisdiction and venue in this District by filing this action in this District, in response to which these counterclaims are asserted and these counterclaims arise out of the same transactions or occurrences as the claims asserted by Buc-ee's in this action.

20128380-1

**Coles IP's Marks Consist of a Cartoon Moose, not a Cartoon Beaver,
and Coles IP's Cartoon Moose Has Been Used in Ohio for Many Years**

5.      Coles IP is part of The Coles Group, a family owned business based in Milan, Ohio.

6.      Mick Coles founded the business with a commitment to serving Ohio's communities with integrity and local pride. The business fulfills that commitment in many ways, including by sponsoring local festivals, community organizations, and local libraries. The business also serves Ohio communities by operating convenience stores throughout northern Ohio.

7.      The business opened its first convenience store in Birmingham, OH in the early 1980s under the MICKEY MART brand as a way for Mick to serve customers while providing fuel. The Birmingham location is still serving Ohioans today:



8.      The business has grown in the nearly forty-five years since, to serve many Ohio communities through forty-two stores under the MICKEY MART and MICKEY'S brands (the "Mickey's Stores").

9.      The Mickey's Stores are not massive travel centers or "highway oases." They are small stores integrated into the Ohio communities they serve. Below are images of Mickey's Stores from over the years:



20128380-1



10.     The Mickey's Stores have also long been represented by their iconic mascot, Mickey the Moose, who welcomes all who visit a Mickey's Store. Below are images of Mickey the Moose from over the years:





11.     The Coles Group has also used MICKEY-formative and moose trademarks over the years in connection with the Mickey's Stores, including at least the following marks (collectively, the "Marks"):



12.     The Coles Group has invested significant resources into the promotion and use of the Marks over the course of many decades. Through those efforts, the Coles Group has acquired common law rights in the Marks at least in Ohio. To confirm those rights, Coles IP also applied to register the Marks on the Principal Register of the United States Patent and Trademark Office ("USPTO").

13. On May 29, 2019, Coles IP filed U.S. Application Serial No. 88/451,509 to register MICKEY MART. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. Buc-ee's did not file a notice of opposition, and neither did any other party. The USPTO registered the mark on August 25, 2020, as U.S. Trademark Registration No. 6,133,272.

14. On May 29, 2019, Coles IP filed U.S. Application Serial No. 88/451,521 to register

. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. Buc-ee's did not file a notice of opposition, and neither did any other party. The USPTO registered the mark on June 23, 2020, as U.S. Trademark Registration No. 6,083,234.

15. On May 29, 2019, Coles IP also filed U.S. Application Serial No. 88/451,540 to

register . The mark consists of the words "Mickey Mart" in stylized letters with a wavy line appearing from behind it and all appearing inside of an oval with a stylized design of a moose in front of mountains and trees. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. Buc-ee's did not file a notice of opposition, and neither did any other party. The USPTO registered the mark on August 11, 2020, as U.S. Trademark Registration No. 6,121,916.

16. On October 18, 2022, Coles IP filed U.S. Application Serial No. 97/636,365 to

register . The mark consists of the words "Mickey Mart" in stylized letters with a wavy line appearing from behind it and all appearing inside of an oval with a stylized design of a moose in front of trees. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. Buc-ee's did not file a notice of opposition, and neither did any other party. The USPTO registered the mark on August 20, 2024, as U.S. Trademark Registration No. 7,483,033.

17. On July 1, 2025, Coles IP filed U.S. Application Serial No. 99/262,119 to register MICKEY'S. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. The deadline to file a notice of opposition is April 30, 2026. As of the date of this counterclaim, no party has filed a notice of opposition.

18. On July 1, 2025, Coles IP filed U.S. Application Serial No. 99/262,130 to register

. The mark consists of a moose head design inside of a hexagon shape. The USPTO examined and published the mark, giving any party who believed it would be damaged by Coles IP's registration of the mark an opportunity to file a notice of opposition. The deadline to file a notice of opposition is April 30, 2026. As of the date of this counterclaim, no party has filed a notice of opposition.

14
20128380-1

19. None of the Marks consists of or includes a beaver.

20. None of the Marks include the head of a beaver.

21. None of the Marks consists of or includes a tongue.

22. None of the Marks consists of or includes teeth.

23. None of the Marks consists of or includes a baseball cap.

24. None of the Marks consists of or includes an ear showing through a baseball cap.

25. None of the Marks consist of a brown and white beaver head wearing a red baseball cap within a yellow circle all outlined in black.

26. None of the Marks consists of the head of a brown and white beaver with a red tongue, black nose, white teeth, and black eyes wearing a red baseball cap with a brown, black, and white ear showing through the side of it, where the beaver design is within a yellow circle that is outlined in black.

27. None of the Marks consists of a brown and white beaver head wearing a red baseball cap within a yellow circle all outlined in black.

28. A moose is not a beaver.

29. A moose is a different animal than a beaver.

30. The moose in each of the Marks has antlers.

31. The eyes of the moose in the Marks are directed forward.

**Cartoon Animals are a Common Branding Element for Convenience Stores**

32. The use of cartoon animals by convenience stores in trademarks is as old and common as convenience stores themselves.

33. Sinclair Oil pioneered modern gas stations in the 1920s. It started using the cartoon dinosaur trademark shown below to promote its goods and services as early as the 1930s. It

15
20128380-1

registered the cartoon dinosaur trademark with the USPTO in the 1970s and it still uses its mark today nearly a century after it first started:



34.     Also in the 1930s, the Stinker Stores started using a cartoon skunk in its trademarks to promote goods and services in connection with its convenience stores. The Stinker Stores have registered various versions of its cartoon skunk with the USPTO over the years and it continues to use cartoon skunks in its trademarks to this day:





35.     In the 1960s, Esso (now owned by ExxonMobil) employed a cartoon tiger in its celebrated "Put a Tiger in Your Tank" campaign, with tiger branding like the examples below used at gas stations nationwide:



36.     In the 1970s, convenience store chain Wawa started using a trademark with a cartoon goose to promote its goods and services. It has registered its goose trademarks with the USPTO over the years and it continues to use the marks today. The company's costumed mascot, "Wally Goose," also regularly attends grand openings and community events:





37.     The family-owned business Liberty Truck Center (now Onvo) has used and registered a cartoon owl mark in connection with convenience stores since at least the 1980s:



38.     Huffman Oil Company has used and registered a cartoon coyote in connection with its retail store services featuring convenience store items and gasoline since the early 2000s:



39.     There are numerous other examples from the past century of companies that have used and registered trademarks with cartoon animals to promote goods and services in connection with convenience stores.

40.     No single entity has exclusive rights to the general concept of using cartoon animals in trademarks to promote goods and services in connection with convenience stores.

**Buc-ee's Recently Opened a Travel Center in Ohio and, Despite Years of Use and Registration of Coles IP's Marks in Ohio, Buc-ee's is Now Attempting to Enforce Its Cartoon Beaver Marks Against Coles IP's Cartoon Moose Marks**

41.     Buc-ee's alleges that it operates travel centers, which are massive stores located along major interstates and highways. Buc-ee's refers to these massive stores as "highway oases."

42.     Buc-ee's opened its first store in the early 1980s in Texas. In 2019, it started to expand to other states, opening locations in Alabama in 2019, Georgia in 2020, Florida in 2021, Kentucky, South Carolina, and Tennessee in 2022, Missouri in 2023, Colorado in 2024, Mississippi and Virginia in 2025, and most recently Ohio in 2026.

43.     Buc-ee's claims to own trademark rights in BUC-EE's and a logo consisting of, in part, a cartoon beaver. Buc-ee's has represented to the USPTO that its beaver logo "consists of the head of a brown and white beaver with a red tongue, black nose, white teeth, and black eyes wearing a red baseball cap with a brown, black, and white ear showing through the side of it, where the beaver design is within a yellow circle that is outlined in black." The beaver logo is shown below:



44.      Buc-ee's has a reputation for aggressively enforcing its alleged trademark rights, with some commentators characterizing the company as a "trademark bully" due to its frequent lawsuits against smaller businesses using cartoon animal marks. Indeed, the company has a history of suing smaller companies that are using marks with cartoon animals in the states in which Buc-ee's has expanded or is soon to expand, frequently forcing those smaller companies to settle out of court. Below are examples of the types of cartoon animal marks Buc-ee's has previously enforced against:



45.      In August of 2024, Buc-ee's started construction on its first location in Ohio. It is a 74,000-square-foot travel center, with 108 fuel pumps and over 700 parking spots, located at 8000 State Highway 235 in Huber Heights near Dayton. It was originally set to open in late 2025, but Buc-ee's experienced delays due to construction issues, utility challenges, and legal battles. Buc-ee's ultimately opened the travel center on April 6, 2026. On information and belief, Buc-ee's sales at this store topped $1 Million on the first day alone.

46.     In August 2025, at the same time Buc-ee's was preparing to open its first location in Ohio, Buc-ee's filed a petition with the USPTO's Trademark Trial and Appeal Board to cancel two of Coles IP's registrations; namely, U.S. Trademark Registration Nos. 7,483,033 and 6,121,916 for Coles IP's marks that consist of a cartoon moose.

47.     At the time Buc-ee's filed that petition with the USPTO, The Coles Group had already been using the challenged marks in Ohio for more than a decade. Coles IP had registered the challenged marks with the USPTO years earlier, and Buc-ee's had never objected to that use and registration despite having years to do so. It was only when Buc-ee's decided to expand into Ohio that Buc-ee's took issue with the decades-long use and registration of Coles IP's Marks.

48.     In response to Buc-ee's trademark cancellation proceeding, Coles IP did not agree to settle quickly out of court. Buc-ee's, therefore, attempted to increase the pressure and costs on Coles IP by filing this lawsuit in federal court. Buc-ee's filed its complaint in this action on February 18, 2026, and it served the complaint and summons on Coles IP on March 2, 2026. Buc-ee's officially opened its first location in Ohio (shown below) about a month later on April 6, 2026:





49.     Consumers are readily able to distinguish between the parties' respective marks. Indeed, a moose is a different animal than a beaver.

### Counterclaim Count I: Unfair Competition Based on Malicious Litigation

50.     Coles IP repeats the allegations above as if fully set forth herein.

51.     Ohio common law recognizes a claim for unfair competition based on malicious litigation.

52.     Buc-ee's claims against Coles IP are objectively baseless. The Coles Group has used the Marks in Ohio for decades, the Coles Group and Buc-ee's operate in different channels (small convenience stores in local communities vs. massive travel centers on major interstates and highways), and their respective marks are so dissimilar that no likelihood of confusion is objectively possible:



53. The objective baselessness of Buc-ee's claims is particularly egregious in this case given that the broader convenience store space has been crowded with cartoon animal trademarks for nearly a century. Consumers are conditioned by encountering these numerous marks to distinguish between them based on minute distinctions. The likelihood-of-confusion analysis must be conducted through that lens, meaning small differences between marks, goods, trade channels, and purchasers are more significant. Consumers can easily distinguish a cartoon moose from a cartoon beaver, just as those consumers have easily distinguished other cartoon animals for many decades (e.g., dinosaurs, skunks, tigers, geese, owls, and coyotes).

54. Buc-ee's filed its objectively baseless claims with the subjective intent to injure Coles IP's ability to be competitive. Buc-ee's took no issue with the use and registration of Coles IP's Marks for many years. It was only when Buc-ee's decided to open a location in Ohio that it took aim at Coles IP. Buc-ee's first filed a proceeding at the USPTO to try to force Coles IP to abandon the Marks that the Coles Group had already spent decades and significant resources building. When Coles IP did not back down, Buc-ee's attempted to increase the pressure and costs by filing this objectively baseless action in this Court. Buc-ee's intent to injure a smaller, family-owned business' ability to be competitive is clear: Coles IP can either abandon the Marks that the business has already spent decades and significant resources building, or it can spend years and significant resources defending its Marks against the much larger Buc-ee's.

55. As a direct and proximate result of Buc-ee's unfair competition, Coles IP has suffered and will continue to suffer injury and damage.

56. Coles IP is entitled to all remedies available under Ohio law for Buc-ee's unfair competition, including at least compensatory damages in an amount to be determined at trial,

20128380-1

punitive damages in an amount to be determined at trial, and reimbursement of all fees and expenses incurred in defending against Buc-ee's objectively baseless claims.

**Counterclaim Count II: Common Law Trademark Infringement (Alternative Count)**

57. Coles IP repeats the allegations above as if fully set forth herein.

58. Coles IP denies that any likelihood of confusion exists between its Marks and Buc-ee's alleged marks, and denies that it has infringed any rights of Buc-ee's.

59. Solely in the alternative, and only in the event that Buc-ee's establishes a likelihood of confusion between Coles IP's Marks and Buc-ee's alleged marks based in whole or in part on Coles IP's MICKEY-formative marks, Coles IP alleges as follows:

60. Coles IP, through itself and its related business entities, has used MICKEY-formative marks in commerce in Ohio and elsewhere for decades, and has thereby acquired valid and enforceable common law trademark rights in those marks that predate Buc-ee's registration and entry into the Ohio market and any rights Buc-ee's may claim there.

61. To the extent any likelihood of confusion is found to exist based in whole or in part on Coles IP's MICKEY-formative marks, such confusion would necessarily arise from Buc-ee's use of marks that are confusingly similar to Coles IP's prior marks.

62. Accordingly, in that circumstance only, Coles IP has priority in its MICKEY-formative marks over Buc-ee's and Buc-ee's use of its marks constitutes infringement of Coles IP's prior common law trademark rights under Ohio law.

63. As a direct and proximate result of such conduct (if proven), Coles IP has suffered and will continue to suffer damage in an amount to be determined at trial.

**Coles IP's Prayer for Relief**

WHEREFORE, Coles IP respectfully requests that:

20128380-1

64.     Judgment be entered against Buc-ee's for unfair competition under Ohio law based on malicious litigation, and awarding Coles IP compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

65.     In the alternative, and only in the event that Buc-ee's establishes a likelihood of confusion between Coles IP's Marks and Buc-ee's marks based in whole or in part on Coles IP's MICKEY-formative marks, (i) judgment be entered against Buc-ee's for common law trademark infringement under Ohio law, (ii) a permanent injunction be entered enjoining Buc-ee's, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, from infringing Coles IP's prior trademark rights; (iii) Coles IP be awarded all damages it sustained as a result of Buc-ee's infringement; and (iv) an accounting be directed to determine Buc-ee's profits resulting from its infringement, and that such profits be paid over to Coles IP.

66.     Coles IP be awarded its reasonable attorneys' fees in this action;

67.     Coles IP be awarded its costs of this action, along with all pre-judgment and post-judgment interest; and

68.     Coles IP recover such other relief as the Court may find appropriate.

### Coles IP's Jury Trial Demand

Pursuant to Federal Rule of Civil Procedure 38(b), Coles IP hereby requests a trial by jury of all issues so triable.

20128380-1

Date:  April 22, 2026

Respectfully submitted,

*/s/ Mark S. Fusco*

Mark S. Fusco (0040604)
Alexandra V. Dattilo (0086444)
WH | BURKLEY LLP
1500 W. 3rd Street, Suite 300
Cleveland, OH 44113
(216) 781-1212 telephone
(216) 710-6263 facsimile
Email: mfusco@walterhav.com
adattilo@walterhav.com

Michael J. Harris (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER, LLP
300 N. LaSalle Drive, Suite 3500
Chicago, IL 60654
312-583-2300 telephone
312-583-2360 facsimile
Email: michael.harris@arnoldporter.com

Michael J. Sebba (*admitted pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER, LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
213-243-4000 telephone
213-243-4199 facsimile
Email: michael.sebba@arnoldporter.com

Heather B. Wallace (*admitted pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019
212-836-8000 telephone
212-836-8689 facsimile
Email: heather.wallace@arnoldporter.com

*Attorneys for Defendant Coles IP Holdings, LLC*

20128380-1

## CERTIFICATE OF SERVICE

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mark S. Fusco*
Mark S. Fusco
*Attorney for Defendant Coles IP Holdings, LLC*

20128380-1